


**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MH:JL
F. #2007R00730

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 6, 2008

The Honorable Nicholas G. Garaufis    The Honorable Judge Brian M. Cogan
United States District Court          United States District Court
Eastern District of New York          Eastern District of New York
225 Cadman Plaza East                 225 Cadman Plaza East
Brooklyn, New York 11201              Brooklyn, New York 11201

> Re:   United States v. Joseph Agate, et al.
>       Criminal Docket No. 08 CR 76 (NGG)

Dear Judges Garaufis and Cogan:

The government writes to advise the Court that the newly indicted above-captioned matter (herein "Agate") is related, pursuant to Eastern District Division of Business Rule 50.3(c), to other matters previously charged before the Court.[1] In particular, the following Agate defendants previously have been charged in the Eastern District, or they have been charged with crimes previously charged in this District: James Outerie, Charles Carneglia, Leonard DiMaria, Vincent Dragonetti and Steven Iaria.[2]  Below is recitation of the relevant facts of both the new and old prosecutions as well as the relevant local rule.

## I.    Introduction

On February 6, 2008, a grand jury sitting in the Eastern District of New York returned an eighty-count charging sixty-two defendants associated with the Gambino, Genovese, and

---

[1]   A copy of the indictment is attached.

[2]   Also charged in the above-captioned case are William Scotto and Angelo Ruggiero, Jr.  In United States v. John Gammarano, et al., No. 06 CR 72 (CPS), Scotto was convicted of RICO including predicate acts of extortion conspiracy, and sentenced to 33 months' incarceration on February 4, 2008.  In United States v. Angelo Ruggiero, et al., No. 05 CR 196 (SJF), following a transfer to the Southern District of New York, Ruggiero pleaded guilty to money laundering conspiracy and is scheduled to be sentenced before Judge Lawrence McKenna on March 4, 2008.

Bonanno organized crime families of La Cosa Nostra, the construction industry, or its supporting unions. The indictment charges racketeering conspiracy, extortion, theft of union benefits, mail fraud, false statements, loansharking, embezzlement of union funds, money laundering, and illegal gambling. The Count One racketeering conspiracy charges twenty-five defendants, all members and associates of the Gambino family, with racketeering conspiracy, which includes predicate acts involving murder, attempted murder, murder conspiracy, felony murder, robbery, extortion, conspiracy to distribute cocaine and marijuana, securities fraud, mail fraud, loansharking, theft of union benefits, illegal gambling, and bribery.

## II. Local Rules

Rule 50.3(a) provides in relevant part, the following:

> A case is 'related' to another for purposes of this guideline when, because of the similarity of facts and legal issues or because the cases arise from the same transactions or events, a substantial saving of judicial resources is likely to result from assigning both cases to the same judge and magistrate judge.

Rule 50.3(c) provides, in relevant part, that "[c]riminal cases are 'related' only when . . . (B) more than one indictment or information is filed against the same defendant or defendants . . . ."

Under Rule 50.3(c), "Other cases will be deemed 'related' only upon written application by a party . . . to the judge presiding over the earlier assigned case. The application will be granted only if a substantial saving of judicial resources is likely to result from assigning both cases to the same judge, or is otherwise in the interest of justice."

## III. United States v. Joseph Agate, et al. New Charges

The new charges in the <u>Agate</u> prosecution against the previously charged defendants or defendants charged in crimes previously indicted in the Eastern District are detailed below.

- <u>James Outerie</u>: Outerie, a soldier in the Gambino family, is charged as with the following crimes as

racketeering acts or substantive crimes: (1) illegal sports gambling; and (2) collection and conspiracy to collect extortionate extensions of credit.

- <u>Charles Carneglia</u>: Carneglia, a soldier in the Gambino family, is charged with the following crimes as racketeering acts or substantive crimes: (1) the murders of Albert Gelb, Michael Cotillo, Salvatore Puma, Louis DiBono, and Jose Delgado Rivera; (2) the robbery of employees of an armored car company, and robbery of a funeral home employee; (3) marijuana distribution conspiracy; (4) the extortion of John Doe #4; and (5) securities fraud conspiracy.

- <u>Leonard DiMaria</u>: DiMaria, a captain in the Gambino family, is charged with the following crimes as racketeering acts or substantive crimes: (1) the extortion of John Doe #4 relating to his Staten Island cement company; (2) the extortion of a pump truck business; (3) an extortion relating to a NASCAR construction site; (4) an extortion relating to an excavation business; (5) an extortion relating to work at the Liberty View Harbor construction site; (6) an extortion relating to cement powder delivers; (7) an extortion of John Doe #4 and John Doe #13 relating to payments owed to Gambino family soldier Jerome Brancato; (8) an extortion of a Staten Island recycling facility; (9) an attempted extortion and extortion conspiracy of companies in the construction industry; (10) money laundering and money laundering conspiracy; (11) illegal sports gambling; (12) securities fraud conspiracy; and (13) bribery of labor officials, mail fraud and embezzlement of union funds.

- <u>Vincent Dragonetti</u>: Dragonetti, a soldier in the Gambino family, is charged with the following crimes as racketeering acts or substantive crimes: (1) the extortionate extensions of credit;(2) an extortionate extension of credit conspiracy, extortionate collection of credit and extortionate collection of credit conspiracy to and from John Doe #1; (3) an extortionate collection of credit conspiracy; (4) illegal sports gambling; (5) illegal gambling involving joker/poker style machines; (6) the extortion of John Doe #4 relating to his work at the NASCAR construction site, excavation business, work at the Liberty View Harbor construction site and cement powder delivers; (6) the extortion of John Doe #4 and John Doe #13 with respect to payments owed to Brancato and; (7) money laundering

and money laundering conspiracy.

- <u>Steven Iaria</u>: Iaria, an associate in the Gambino family, is charged with the following crimes as racketeering acts or substantive crimes: (1) the extortionate extensions of credit, extortionate extension of credit conspiracy, extortionate collection of credit and extortionate collection of credit conspiracy to and from John Doe #1; (2) an extortionate collection of credit conspiracy and an extortionate collection of credit conspiracy; and (3) illegal sports gambling.

## IV. **Previously Charged Cases**

There are several cases in which the defendants Outerie, Carneglia, DiMaria, Dragonetti and Iaria were either charged, or in which crimes for which they are now charged in the <u>Agate</u> prosecution have previously been charged. The Eastern District Judges who were assigned to these matters are: Judge Garaufis and Judge Cogan. These matters are detailed below as well as the relation between those cases and the <u>Agate</u> prosecution.

5

A.  **Matters Relating to Judge Garaufis**

There are two cases pending before Judge Garaufis that involve the same securities fraud conspiracy charged against the Agate defendants Carneglia and DiMaria and the same extortionate extension of credit conspiracies charged against Dragonetti and DiMaria in Agate. The related from these prosecutions is detailed below.

1.  **United States v. Jonathan Winston, et al.
    Case No. 00 Cr 1248 (NGG)**

On December 4, 2000, twenty defendants were charged in United States v. Jonathan Winston, et al., No. 00 CR 1248 (NGG), with participating in a massive stock fraud scheme that defrauded thousands of individual investors out of more than $50 million from approximately February 1994 to March 1998. The scheme including brokers, traders, stock promoters and principals of a broker-dealer syndicate that involved First United Equities ("First United"), Lexington Capital ("Lexington") and AGS Financial Group ("AGS"), and resulted in the manipulation of the securities of at least five companies. The defendants were charged with conspiracy to commit securities, mail and wire fraud, securities fraud, mail fraud, wire fraud, conspiracy to commit money laundering, money laundering, conspiracy to engage in unlawful money transactions and unlawful money transactions.

The scheme was led by defendants Jonathan Winston, Robert Winston, Hunter Adams and Michael Reiter, who, together with others, controlled the brokerage firms. The defendants were charged with utilizing various means to manipulate the market price of the securities of companies that traded their securities on the NASDAQ National Market System ("NASDAQ"), the NASDAQ small cap stock market, the Over-the-Counter Bulletin Board market and the Philadelphia Stock Exchange, and engaging in other deceptive sales practices with respect to public investors. Among the companies whose securities were the subject of manipulation were Ashton Technology Group, Inc., EquiMed, Inc., IRT Industries, Inc., Mama Tish's Italian Specialties, Inc. and National Medical Financial Corporation (collectively, the "House Stocks").

As alleged in the indictment, the schemes followed a similar pattern: the defendants acquired secret control over large blocks of stock and stock warrants of the House Stocks. The defendants acquired the House Stocks for little consideration, usually by paying kickbacks or prearranging trades with those who controlled the House Stocks. Having obtained control of the House Stocks, the defendants then artificially and

6

illegally inflated the stocks' prices.  The defendants made false and fraudulent representations to retail customers, used high pressure and deceptive sales tactics, paid and accepted excessive, undisclosed commissions and sales credits, made unauthorized trades in retail customer accounts, and authorized unregistered brokers and cold callers routinely to misrepresent to customers that they were registered brokers.

The high pressure and deceptive sales tactics used by the brokers included forecasting enormous returns on investments, luring customers to buy or hold House Stocks by promising that the customers would be allowed to participate in future lucrative deals, and verbally abusing customers who resisted advice to buy or hold House Stocks.  As the price of the House Stocks rose as a result of these unlawful techniques, the defendants sold their shares of House Stocks from accounts that they secretly controlled to First United and Lexington's customers, reaping huge profits.

The defendants then sought to maintain the price of the House Stocks held by First United and Lexington's customers so that the scheme would go undetected and the First United and Lexington customers could be solicited again to purchase other artificially inflated House Stocks.  The defendants artificially maintained the price of the House Stocks by a variety of techniques designed to insulate the House Stocks from the adverse pressure of a lack of genuine market demand, which would cause the stock price to collapse.  These techniques included using high-pressure tactics and false statements to persuade customers not to sell House Stocks, failing to take and execute customer orders to sell, and threatening individuals with bodily harm unless they ceased engaging in transactions that had the effect of causing the price of the House Stocks to decrease, such as short-selling those stocks.  Eventually, after the defendants sold all or most of their shares of a House Stock at artificially inflated prices, they withdrew their support of the price of the House Stock and allowed it to collapse, causing their customers to sustain heavy losses.  To date, all defendants have pleaded guilty and all but one defendant has been sentenced.

\* \* \* \* \*

In the Agate prosecution, the defendants Carneglia and DiMaria are charged with conspiring to commit securities fraud as part of the racketeering conspiracy from approximately January 1995 to December 1996.  The charges against Carneglia and DiMaria involve the same securities fraud scheme charged in the Winston prosecution.  Thus, the charges in Agate arise from the same

7

transactions and events and present virtually the same factual and legal issues as in <u>Winston</u> and the securities fraud conspiracies charged in the two cases overlap in participants, time frame, scope and objectives.

Given the factual and legal similarities in the securities fraud conspiracies charged in both <u>Winston</u> and <u>Agate</u> and the familiarity of the presiding judge with the history and complexities of a securities fraud scheme involving the manipulation of the market price of securities of nine companies by over thirty defendant brokers, traders, stock promoters and principals of the broker-dealer syndicate, resulting in investor losses exceeded $100 million, the security fraud conspiracy charges are related within the meaning of Rule 50.3, such that relating this case is in the interest of justice and will result in a substantial savings of judicial resources.

3.  United States v. John Doe
    <u>Case Number 08 CR 46 (NGG)</u>

On January 30, 2008, an individual, herein referred to as John Doe, pled guilty to an information in <u>United States v. John Doe</u>, No. 08 CR 46 (NGG), charging racketeering conspiracy including predicate acts of extortionate extension of credit conspiracy from approximately May 2001 to September 2002 and extortionate extension of credit conspiracy from approximately January 2003 to March 2005. As part of that conspiracy, John Doe agreed with Vincent Dragonetti and Steven Iaria to make extortionate extensions of credit and in the <u>Agate</u> prosecution, the defendants Dragonetti and Iaria are charged with that very same criminal conduct. Thus charges in the two cases arise from the same transactions and events and present the same factual and legal issues and, accordingly, these charges are related within the meaning of Rule 50.3, such that relating this case is in the interest of justice and will result in a substantial savings of judicial resources.[3]

---

[3]   It should also be noted that there is also some relation between <u>Agate</u> and the prosecutions in <u>United States v. Massino, et al.</u> 02 Cr. 307 (NGG) and <u>United States v. Urso, et al.</u>, 03 Cr. 1382 (NGG), although it is not clear that the "relation" is sufficient to merit consideration standing alone. Nonetheless, the government notes briefly, that as part of the <u>Agate</u> prosecution, the government continues to investigate additional crimes committed by members and associates of the Gambino family, including their involvement in the murders of Bonanno family captains Alphonse Indelicato, Philip Giaccone and

8

B.  Matter Relating to Judge Cogan

The defendant Outerie, who is charged in the Agate prosecution, currently has a criminal case pending before Judge Cogan. In United States v. James Outerie, et al., No. 06 CR 815 (BMC), Outerie, along with eight other defendants, including Russell Ferissi, were charged in a sixteen count superseding indictment on February 22, 2007.[4] Outerie was charged with racketeering conspiracy including predicate acts of extortionate collection of credit/extortionate collection of credit conspiracy and extortion/extortion conspiracy, and substantive counts of extortionate collection of credit, extortionate collection of credit conspiracy, extortion and extortion conspiracy.

Specifically, Outerie was charged with using and conspiring to use extortionate means to collect credit extended to John Doe #2 from approximately January 2003 to December 2005 (Racketeering Act Two and Counts Four and Five) and to John Doe #3 from approximately December 2004 to December 2005 (Racketeering Act Three and Counts Five and Six), and using extortionate means to secure payments from the owners of Royal Crown Bakery from approximately December 2004 to December 2005 (Racketeering Act Four and Counts Eight and Nine).

Under Rule 50.3(c), the above-captioned case and the Outerie prosecution are "related" because more than one indictment has been filed against the same defendant. Though related, the charges against Outerie in the two cases do not arise from the same transactions or events and there is no similarity of facts and legal issues. While Outerie is charged in both cases as a member of the Gambino family with racketeering conspiracy including predicate acts of extortion of extortionate collection of credit/extortionate collection of credit conspiracy, the two conspiracies do not overlap in victims or coconspirators.

---

Dominick Trinchera on May 5, 1981. These murders were previous charged in both the Massino and the Urso prosecutions - both of which were before Judge Garaufis. As the Court is aware, these crimes were in fact tried before the Court during a lengthy trial.

[4]  Ferrisi also is charged in the above-captioned case. In United States v. James Outerie, et al., No. 06 CR 815 (BMC), Ferrisi was convicted of extortion conspiracy, and sentenced to one year and one day imprisonment on October 5, 2007.

V.  Conclusion

    Because the defendants James Outerie, Charles Carneglia, Leonard DiMaria, Vincent Dragonetti and Steven Iaria were either previously charged or because they are charged with crimes previously charged in this District, the Agate matter should be related to either Judge Garaufis or Judge Cogan. Accordingly, the government files this letter seeking guidance as to the proper relation in this matter.

                                    Respectfully submitted,

                                    BENTON J. CAMPBELL
                                    UNITED STATES ATTORNEY

                            By:     _____
                                    Mitra Hormozi
                                    Joey Lipton
                                    Assistant U.S. Attorneys
                                    (718) 254-6518/6125/