UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
UNITED STATES OF AMERICA,   :
                            :    CR-08-76 (NGG)
        v.                  :
                            :    February 11, 2008
NICHOLAS CALVO,             :
                            :    Brooklyn, New York
            Defendant.      :
                            :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR BAIL APPLICATION
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          BENTON J. CAMPBELL, ESQ.
                             UNITED STATES ATTORNEY
                             BY: ROGER BURLINGAME, ESQ.

                             ASSISTANT U.S. ATTORNEY
                             225 Cadman Plaza East
                             Brooklyn, New York  11201

For the Defendant:           EMILY DANIELS, ESQ.


Audio Operator:


Court Transcriber:           ARIA TRANSCRIPTIONS
                             c/o Elizabeth Barron
                             31 Terrace Drive, 1st Floor
                             Nyack, New York 10960
                             (215) 767-7700


Proceedings recorded by electronic sound recording,
transcript produced by transcription service

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ FEB 11 2008 ★
BROOKLYN OFFICE

1          THE CLERK:  Criminal cause for bail application,

2    case number 08-CR-76, United States versus Nicholas Calvo.

3    Counsel, please state your names for the record.

4          MR. BURLINGAME:  Roger Burlingame for the United

5    States.  Good morning, Judge.

6          THE COURT:  Good morning.

7          MS. DANIELS:  Emily Daniels, CJA, for the

8    defendant.  Good morning, your Honor.

9          THE COURT:  Good morning.  Good morning, Mr.

10   Calvo.

11         THE DEFENDANT:  Good morning.

12         THE COURT:  Mr. Calvo, this was put on for a

13   detention hearing.

14         Ms. Daniels?

15         MS. DANIELS:  Your Honor, I don't have my suretors

16   with me because, unfortunately, they're the same people that

17   would be bringing the certified check.  So what I would ask

18   today is if the Court sets the conditions and then we can

19   put it back on for the suretors, if they're acceptable to

20   the government.  And I would also ask that a financial

21   amount be set, because then the suretor can come in with the

22   certified check.

23         THE COURT:  Well, why don't you fill me in?  I

24   have the pretrial report, I have the indictment, which lists

25   Mr. Calvo in fifteen --

1          MS. DANIELS:  Fifteen?  I have nine.

2          THE COURT:  Well, fifteen paragraphs, maybe

3    different counts.

4          MR. BURLINGAME:  He's in ten counts.  He's charged

5    most significantly with two counts of -- that are extortion

6    related.

7          MS. DANIELS:  I actually have nine counts, and my

8    understanding is that they're related to three separate

9    instances.  The first instance appears to be that he and

10   others helped Andrews Trucking get a position with Chiavone

11   (ph) for hauling waste from excavation sites, and allegedly,

12   he got paid some money for that.

13         And the other group of counts, four of them relate

14   to allegedly assisting someone in getting a union job, to

15   which the government alleges this individual is not

16   entitled.  There is mail fraud because, apparently, the

17   application was put through the mail, not allegedly by this

18   defendant.  And, allegedly, embezzlement, because by getting

19   this union job for this individual, that was taking the

20   money of the union.

21         The second group of counts or the third group of

22   counts, basically the same allegations but relating to Union

23   731 instead of 325.

24         THE COURT:  Let me just ask Mr. Burlingame.  I've

25   looked at the Pretrial Services report, which does recommend

1    that he be released on a bond secured by property.

2              MR. BURLINGAME:  Exactly, Judge.

3              THE COURT:  And that's the disagreement here?

4              MR. BURLINGAME:  That's what --

5              THE COURT:  So instead, you want to have a

6    check --

7              MS. DANIELS:  Yes, that's right.

8              THE COURT:  -- put into the Court's account rather

9    than have property.

10             MR. BURLINGAME:  Well, Judge, but the

11   government --

12             THE COURT:  I was just trying to figure out what

13   the disagreement is.

14             MR. BURLINGAME:  I'll take you through the

15   history, which is the government and defense counsel had

16   agreed to a $750,000 bond, secured by $300,000 in property.

17             MS. DANIELS:  I never agreed to that.  That was

18   the government's recommendation.  I spoke to Daniel Brownell

19   (ph) and I told him that there was no way we could come up

20   with it, because we were never on the record with this.  We

21   definitely never agreed to it, because he doesn't have any

22   property.

23             THE COURT:  Okay, so let's go from there.  I take

24   it that that's too much and not what was agreed to, but

25   that's what they were proposing, correct?

1      MR. BURLINGAME:  Well, I think the cut to the

2  chase argument here is that we should -- I would be happy to

3  hear whatever Mr. Calvo's best bail package is, but I think

4  before we decide on what that bail package should be, the

5  government should have an opportunity to interview his

6  suretors and --

7      THE COURT:  Absolutely.  I don't think anybody --

8      MR. BURLINGAME:  So I would suggest that we just

9  put this off until we have his suretors here.

10     THE COURT:  Well, I don't have a problem with the

11  argument that they want to know how much the bail would be

12  so that they, instead of property, can propose a certified

13  check, because they can't come with a blank certified check.

14  That doesn't work.

15     MR. BURLINGAME:  Correct, Judge, but you also know

16  that, practically speaking, if you decide right now a

17  $250,000 bond secured by a $25,000 check is adequate, then

18  whoever the magistrate judge is when the suretors show up on

19  Friday is not going to go against your ruling.  And I think

20  that that's unfair to the government because we're not going

21  to have an opportunity --

22     THE COURT:  Mr. Burlingame, if you find out that

23  any of the suretors are insufficient for any reason, that's

24  something that's not going against my ruling.  I would only

25  allow him to be released if the suretors end up being who

1    they say they are, with assets, et cetera.  I mean, again,

2    part of the whole purpose of having us rotate through this

3    part is, we do all cover for each other and we do --

4              Judge Matsumoto set bonds.  I just took suretors

5    on those bonds.  If either of those cases, the suretors

6    turned out not to be sufficient or adequate, the government

7    would raise that to the Court.  I'm just trying to get to an

8    agreement here that both sides think is adequate, or I'll

9    hear it, because it was on for an application.

10             What was it that you were thinking, Ms. Daniels?

11             MS. DANIELS:  Your Honor, first, I want to say I

12   totally agree.  That's what I was going to propose.  I have

13   the names of two suretors.  If those suretors are

14   unacceptable, then obviously, I don't expect him to be

15   released on the bond.

16             THE COURT:  Is one of the suretors his wife?

17             MS. DANIELS:  No, it's not his wife.

18             THE COURT:  Are they no longer married?

19             MS. DANIELS:  They're going to be getting

20   divorced, so I don't think his wife is an appropriate

21   suretor.  I can give the Court the names of the two

22   suretors, but I will say that if those suretors are not

23   acceptable, then we'll find two others.

24             THE COURT:  Well, what is the amount that you were

25   going to propose?

1    MS. DANIELS:  I was going to propose a $250,000

2   bond secured by $25,000 cash.  He does not have any equity

3   in property.

4    THE COURT:  Let me just hear what the government's

5   position is regarding that, and let's assume the two

6   suretors are going to be fine.  Go ahead.

7    MR. BURLINGAME:  Judge, I think that's woefully

8   inadequate.  The defendant is charged with two counts that

9   carry -- where he faces twenty years on each count, in

10   addition to eight other counts related to the theft of union

11   benefits.  It's a serious case.  Pretrial Services is

12   recommending that he only be released with a bond secured by

13   property, and I don't think $25,000 in cash from these

14   unnamed suretors is in any way sufficient.

15    THE COURT:  Let's assume that we get more than two

16   suretors on the bond.  Will that relieve some of the

17   government's concern?  There is no prior criminal history.

18   We have a guy who is 52 years old, who was born in Queens,

19   New York, has no criminal history here.  I understand the

20   charges are serious, but I'm also interested in setting the

21   least restrictive, to ensure that Mr. Calvo will appear when

22   he's directed to appear.  That's my job.

23    MR. BURLINGAME:  We also have a man who is 52

24   years old and has lived in this area his entire life, who is

25   an executive at a construction company and can't have anyone

1    come in here an post any property on his behalf?  That

2    suggests to me that he actually does pose some sort of a

3    flight risk, that there's no one who he has come in contact

4    with in his 52 years who is willing to come in here.

5         THE COURT:  He's not saying there's nobody who's

6    willing to come in here.  He's saying there is no property.

7    And what I'm thinking is -- again, I don't have to pry into

8    every piece of his business.  What I'm thinking is, let's

9    come to a number that we can agree to.  If Mr. Calvo is

10   going through with a divorce, that may be part of the reason

11   why there's no property to be posted.

12        MR. BURLINGAME:  Judge, I agree.  I'm just saying

13   we're not dealing with a project drug case, where no one who

14   the defendant knows makes more than --

15        THE COURT:  Oh, we don't let anybody out in those

16   cases unless people come to stand up, Mr. Burlingame.

17        MR. BURLINGAME:  Well, I know, but I've had a

18   number of those cases in front of your Honor, and I know

19   that you're reluctant to force people to put up property if

20   there's no property available.  But I think that we're

21   dealing with a different situation here.  He's an executive

22   at a reputable construction company.

23        THE COURT:  Let's get the argument on the other

24   side.

25        MS. DANIELS:  Number one, he's not an executive,

1    he's a sales person.

2            THE DEFENDANT:  I'm a salesman.

3            MS. DANIELS:  Number two, the government has been

4    asking him about this company.  They are very nervous to put

5    up any property.  They are not going to put up property.  He

6    has no equity in his home.  That home may be taken anyway.

7    He does have friends who are willing to put up money.  If I

8    have to get another suretor, I will get another suretor.  I

9    can probably even get a little bit more money, but there's

10   no property.  I mean, it's a lot to ask a friend to put up a

11   home, obviously.

12           THE DEFENDANT:  I have two suretors (ui).

13           MS. DANIELS:  Do not speak.

14           He does not have any equity in a home.  The

15   company that he works for is a company that the government

16   may be doing something to.  So, obviously, they're not going

17   to put up any property.  They're not charged, but the agents

18   did ask him about it, so I'm assuming that they're very

19   nervous at this point.

20           So, in any event, there is no property.  That's

21   not going to happen.  It doesn't exist.  So if we have to

22   come up with a little more money or another suretor, we will

23   do that.

24           THE COURT:  Anything else, Mr. Burlingame, that

25   I'm missing here?

1          MR. BURLINGAME:  I believe your Honor is aware of

2     the situation.  I'd just ask that you stick with the

3     Pretrial Services recommendation.

4          THE COURT:  Well, again, I'm going to set the bond

5     as $300,000, $30,000, three suretors.  The other bonds that

6     I signed today were similar.

7          MR. BURLINGAME:  The other people were charged

8     with gambling.  He's charged with extortion, which is a

9     crime of violence in the Second Circuit.

10          THE COURT:  Again, the allegations that were

11     against the other people that I saw today, again, looking

12     over them quickly, is they're associates of organized crime.

13     There was a guy who came in with his mother and his sister.

14     They live in one home, they own another home.  If this guy

15     doesn't have a mother or a sister, unless there's something

16     you want to tell me -- unless there's something else you

17     want to tell me, I'm going to stick with $300,000, $30,000

18     and three suretors.

19          MR. BURLINGAME:  Judge, one difference is, in

20     addition to the folks being charged with gambling, which

21     will carry a far, far lighter prison sentence, in the

22     indictment, Mr. Calvo is charged with being an associate of

23     the Genovese crime family, which is a serious allegation.

24          THE COURT:  Again, if I look at the Pretrial

25     Services reports in the other people's cases, I may see that

1  they have a rap sheet, which this man has none.

2         MR. BURLINGAME:  I know, but in this case, over

3  the 62 defendants who were arraigned at the end of last

4  week, there was a certain logic that was being carried out

5  that was different between the gambling defendants, who are

6  facing far fewer penalties, and the defendants who are

7  charged with the organized crime/extortion activities.

8         THE COURT:  And I understand --

9         MR. BURLINGAME:  And this bond is far outside the

10 range that was being agreed to.

11        THE COURT:  Then you have the right to appeal to

12 Judge Garaufis on that.  I see that the person before me has

13 no criminal arrest history.  I see that he is a worker in a

14 construction company.  You say that he should have

15 properties.  He's told me he doesn't have properties.  He's

16 told me that he's going through a divorce.  He has no

17 parents that are alive.  He has one brother living in

18 Queens.  That's what it reports.

19        Yes, they say that there should be property.  I'm

20 going to take $30,000 in hand from whatever friends there

21 are and get three suretors, and I believe that that should

22 be sufficient for Mr. Calvo to report back to court when

23 he's directed to do so.

24        MR. BURLINGAME:  Okay, Judge.  We would just ask

25 that you stay the order while we appeal to Judge Garaufis.

1        THE COURT:  You can, of course.

2        MS. DANIELS:  Your Honor, that's just going to

3   delay it.  I would ask that we put it on for tomorrow, see

4   if we have the suretors, and then --

5        THE COURT:  Let them appeal, because if you're

6   going to get the suretors to come in and Judge Garaufis is

7   going to overrule it -- let's try to get to Garaufis today.

8   Mr. Calvo is here now.  If Judge Garaufis says it's a go,

9   then you get the suretors and have them come back tomorrow.

10       Mr. Lipton, Mr. Burlingame, do your best efforts

11  to get before Judge Garaufis today.  And if Judge Garaufis

12  says that's sufficient, then she gets the people to come

13  down tomorrow.  If he says it's insufficient because it's

14  numbers that we have set, you can make your application to

15  him of what you would think you would need.

16       MS. DANIELS:  Can I put some other things on the

17  record?  He is not charged in the racketeering.  Just

18  because there's an indictment with 62 people, I mean, there

19  are people here who are facing nothing, there are people

20  here who are facing life.  I mean, the government seems to

21  think that because he's in this indictment with some other

22  very serious people, that therefore, he should be getting an

23  exorbitant bail.

24       And I know from having sat in court last week, the

25  government did not get -- they asked for $750,000, $300,000

1   in property, and they did not get it on many circumstances.

2   So even Judge Matsumoto thought that that was an extreme

3   bail.  This defendant would probably be in more trouble by

4   fleeing than if he actually appeared.

5           THE COURT:  Of course he would be in more trouble

6   by fleeing.  But, again, the government is entitled to ask

7   for what they think they need.  The Court sets what it

8   believes is the least restrictive bail, to make sure that

9   Mr. Calvo will come back.  And I am confident that, with

10  three suretors and $30,000 in house and three --

11          THE DEFENDANT:  I have four children.

12          THE COURT:  Again, Mr. Calvo, everybody has a

13  life.

14          THE DEFENDANT:  I know.

15          THE COURT:  And, again, you need to hold it

16  together here and let your attorney do the work that she

17  knows how to do, to try to get this matter resolved.

18          But I do ask that the government try to get to

19  Judge Garaufis as soon as possible.  Mr. Calvo will be kept

20  here so that you can get right up to the judge.  And if he

21  approves it, then you'll have to put it back on for tomorrow

22  and get the suretors in, at which time you will of course be

23  able to review their financial statements, how they make

24  their living, how they're employed, et cetera.

25          But, again, if I was to call upon three of my

1  friends to try to get them to post money, that would be a

2  big undertaking in and of itself, signing a house.  Of

3  course, if you have people that have a house, that is also a

4  scary prospect, but that's why I'm thinking that a

5  substitution of 10% of the bond in cash would be sufficient.

6          So my reasons are stated on the record.  Judge

7  Garaufis will do what he believes is the right thing to do,

8  and I'm just asking that the government expedite this.

9          MR. BURLINGAME:  We will, Judge.

10          THE COURT:  So I'll sign on to the bond.  Well,

11  actually, I can't sign because the suretors haven't been

12  presented.  But this will be the bond; that three financial

13  suretors have to co-sign and that $30,000 be deposited in

14  the registry of the Court.  And of course, the government

15  will have the right to interview any suretors who are called

16  forward.

17          Is there anything else that needs to be addressed

18  today, Mr. Burlingame?

19          MR. BURLINGAME:  No, Judge, and we'll get in touch

20  with Judge Garaufis's chambers.

21          THE COURT:  Anything further on behalf of Mr.

22  Calvo?

23          MS. DANIELS:  No, your Honor, thank you.  And if

24  we are, we'll put it on for tomorrow morning.

25          THE COURT:  Very good.

1          MS. DANIELS:  Thank you very much.

2          THE COURT:  Thank you.

3          * * * * * * * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct transcript

19   from the electronic sound recording of the proceedings in

20   the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    February 11, 2008