

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MH:JL                                          *271 Cadman Plaza East*
F. #2007R00730                                 *Brooklyn, New York 11201*


                                               February 14, 2008


The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

              Re:  United States v. Joseph Agate, et al.
                   Criminal Docket No. 08-76 (NGG)

Dear Judge Garaufis:

          The government submits this letter in response to the
motions filed by defendant Joseph Corozzo on February 12, 2008,
and by defendants Vincent Dragonetti, Vincent Gotti and Mario
Cassarino on February 13, 2008.

          In his motion, Corozzo argues that the separation
requests by the government have resulted in his "administrative
detention" at the Metropolitan Detention Center ("MDC") in
violation of his due process rights.  Corozzo seeks immediate
release from administrative detention or, in the alternative, a
hearing on the matter.  In their motions, Dragonetti, Gotti and
Cassarino join Corozzo's motion and also argue that the
separation requests by the government have unreasonably
interfered with their ability to consult with their counsel in
violation of their Sixth Amendment rights.  Dragonetti, Gotti and
Cassarino request the removal of any separation requests or, in
the alternative, a hearing on the matter.

          As set forth below, the defendants' administrative
detention was instituted as part of the MDC's routine processing
procedure as a safety and security measure pending
classification, and not in response to the separation requests by
this Office.  These safety and security measures, which have
included separation from codefendants during attorney visits, are
in keeping with permissible federal regulations and reasonable
under the circumstances.  According to the MDC, the
classification is now complete and the defendants have been
designated to general population.

          It was only after considering the limited number of
general population housing units at the MDC that this Office

recently sought separation requests.  Those requests were
specifically tailored to avoid the need for administrative
detention for any of the defendants.  Given the status of the
defendants as members of the Gambino organized crime family
("Gambino family") and their involvement in the charged crimes of
violence, the separation requests are appropriate and reasonable
under the circumstances.

Should those separation requests, once in effect, cause
delay or inconvenience with respect to attorney visits, this
Office will assist in facilitating the process.  However, delays
due to legitimate safety and security concerns of the prison, not
withstanding the inconvenience to counsel, fall within the
properly exercised authority of the MDC and do not constitute a
denial of defendants' constitutional rights.

I.   Introduction

On February 7, 2008, over 50 defendants were arrested
pursuant to an indictment charging 62 defendants with numerous
federal offenses.  Almost two dozen defendants were charged with
committing crimes of violence as members and associates of the
Gambino family.  A large majority of those defendants were
ordered detained.  Over a dozen of the defendants, including
Frank Cali, Mario Cassarino, Nicholas Calvo, Charles Carneglia,
Domenico Cefalu, Joseph Corozzo, John D'Amico, Vincent
Dragonetti, Vincent Gotti, Richard Gotti, Ernest Grillo, James
Outerie and Vincent Pacelli, were designated to the MDC.[1]

Upon intake on February 7, 2008, officials at the MDC
placed the defendants in administrative detention pending
classification.  Though the MDC may have expected separation
requests, which routinely accompany organized crime cases such as
this, the United States Attorney's Office (the "Office") neither
requested nor was it consulted about administrative detention or
the defendants' separation.  On February 9, 2008, this Office was
contacted by the Marshals Service about separation requests.
This Office then prepared separation requests that were
formalized and sent to the MDC on February 11, 2008.

On February 11 and 12, 2008, this Office consulted the
MDC about requesting separations for such a large number of
defendants given the limited number of housing units.  The MDC
indicated that since there were more defendants than the seven

---

[1]     Some of the detained defendants have since been
released on bond and other defendants have been detained in other
facilities.

general population housing units, a request seeking separation of
all defendants would necessitate administrative detention for
several defendants.

In response, on February 12 and 13, 2008, this Office
tailored its request to separate the defendants into seven
groups, each containing either two or three defendants - thus
avoiding the need for administrative detention.  On February 13,
2008, the MDC advised that it had completed the classification
and was going to release the defendants from administrative
detention into general population.

Other than the request to separate the defendants into
the different housing units, this Office has not sought to place
any conditions or restrictions on attorney visits.  To date, the
complained of delays have not been occasioned by the separation
requests, but rather by MDC's routine administrative detention
procedure pending classification.  This Office will assist
defense counsel and the MDC in devising a schedule to minimize
any delay in attorney visits in connection with the separation
requests.

II.  Legal Basis For Separation

The Code of Federal Regulations establish "a system for
monitoring and controlling certain inmates who present special
problems for prison management, a system called the Central
Inmate Monitoring System ("CIMS")."  Green v. United States, No.
94-5706, 1995 WL 574495, at *4 (E.D. Pa. Sept. 22, 1995).  CIMS
was designed to "provide protection for all concerned and to
contribute to the safe and orderly running of federal
institutions."  28 C.F.R. § 524.70.  Section 524.72 specifically
governs "separations" and provides that inmates may be
"separated" for a variety of reasons, including at the "request
of the Federal Judiciary or U.S. Attorneys."[2]

---

[2]    Courts repeatedly have held that the "control and
management of federal penal institutions lies within the sound
discretion of the responsible administrative agency."  Arias v.
U.S. Parole Commission, No. 89 CIV. 7877 (LBS), 1991 WL 73831, at
*2 (S.D.N.Y. Apr. 29, 1991) (citing Marchesani v. McCune, 531
F.2d 459, 462 (10th Cir. 1976)).  Further, Bureau of Prisons
officials have been vested with "full discretion to control
conditions of confinement, including prisoner classification,"
and judicial intervention is only warranted upon a showing that
"prison officials exercised their discretionary powers in such a
manner as to constitute clear abuse or caprice."  Id.

The regulations list specific categories for "separation" under CIMS, including inmates who agree to cooperate with law enforcement authorities, inmates who have made threats to government officials, "inmates who have received widespread publicity as a result of their criminal activity or notoriety as a public figure," inmates who belong to or are closely affiliated with groups (e.g., prison gangs), which have a history of disrupting operations and security in prison, state inmates serving their time in federal prisons, and inmates who have been targeted for "separation." 28 C.F.R. § 524.72. In addition, a catch-all category provides for "[i]nmates who require special management attention" but who do not fit into one of the other categories. Id.

Applying those regulations here, there is ample basis for the separation of the detained defendants. As alleged in the indictment and set forth in detail in the government's detention memorandum, Corozzo, Dragonetti, Gotti and Cassarino, along with the other defendants detained at the MDC, are members of a large and dangerous organized crime family, who have committed crimes of violence in furtherance of that enterprise.[3] Not only have those inmates received widespread publicity as a result of their criminal activity, but they are part of a renowned gang requiring special management attention.[4] Consistent with the purpose of those regulations, courts in this district have routinely separated codefendants prior to trial, especially for those charged with acts of violence.

For these reasons, the separations requested by this Office are appropriate and warranted under the circumstances of this case.[5]

III. The Separations Do Not Violate Defendants' Right to Counsel

---

[3] Only defendant Nicholas Calvo, for whom the government did not seek detention subject to the bond conditions required by the Court, is not a member of the Gambino family.

[4] To date, defendants John D'Amico, Leonard DiMaria and Vincent Pacelli have been detained on the ground that they pose a danger to the community.

[5] Moreover, as the defendants' acknowledge, they must first pursue and exhaust their administrative remedies with the Bureau of Prisons before seeking redress with the court. Such a course of action appropriately permits the responsible administrative agency to first address and remedy the grievance.

In their motions, Dragonetti, Gotti and Cassarino argue that the separations should be removed because they violate their constitutional right to counsel.  The defendants' argument is without merit.

While detained defendants retain their right to counsel, this right is not absolute.  See Howard v. Cronk, 526 F. Supp. 1227, 1229 (S.D.N.Y. 1981).  The right to counsel does not require that a defendant be permitted unlimited access to counsel.  See id.  The Supreme Court has held, for example, that prison officials must only provide inmates with a "reasonable opportunity to seek and receive the assistance of attorneys." Procunier v. Martinez, 416 U.S. 396, 419 (1974) (relating to convicted defendants and not pretrial defendants).

Prison officials may restrict a defendant's right to consult with counsel "through reasonable administrative rules and practices for the maintenance of prison security and order, provided they do not "unjustifiably obstruct" a prisoner's ability to consult with his attorney." Howard, 526 F. Supp. at 1229.  Further, courts have held that "in evaluating a prison regulation, prison administrators are entitled to substantial deference." Id.

As stated, the delays in attorney visits have not been occasioned by the separation requests of this Office; rather, it was due to the initial placement in administrative detention while the defendants were undergoing classification.  However, even if the separation requests were the source of the defendants' complaint, the delays simply do not rise to the level of a constitutional violation.

It is not the case that the defendants were denied the right to meet with their counsel.  Rather, according to the defendants, their attorney visits were delayed.  In light of the fact that the initial placement in administrative detention falls well within "reasonable administrative rules" that address a legitimate security concerns, such delay does not translate into a Sixth Amendment claim.  See Arias, 1991 WL 73831, at *2 (court denied defendant's claim that his "classification" under section 524.72 violated his "due process rights" because "the classification does not prohibit [the defendant] from engaging in normal prison activities, although he might be subject to an administrative delay as a result of the extra security measures required by the classification."); see also Smith v. Coughlin, 577 F. Supp. 1055, 1064 (S.D.N.Y. 1983) ("The attack on the constitutionality of a prison administration regulation or statute should be rejected unless the statute or regulation is

unnecessary for any legitimate penological objective"); <u>Bell v. Wolfish</u>, 441 U.S. 520, 547 (1979) ("Even when an institutional restriction infringes on a specific constitutional guarantee . . . the practice must be evaluated in light of the central objective of prison administration, safeguarding institutional security.").[6]

IV.   <u>Conclusion</u>

        Because the defendants' administrative detention was not occasioned by the separation requests of this Office, and given the fact that the defendants are being released into general population, the Court should deny the defendants' requested relief concerning their designation at MDC.  Further, because the delays in attorney visits also were not occasioned by the separation requests and, in any event, do not rise to the level of a constitutional violation, the Court should deny the defendants' requested relief concerning their right to counsel. As indicated, once the requested separations take effect, this Office will assist defense counsel and the MDC to minimize any delay in attorney visits at the MDC.

                              Respectfully submitted,

                              BENTON J. CAMPBELL
                              UNITED STATES ATTORNEY

                    By:    _____
                              Joey Lipton
                              Assistant U.S. Attorney
                              (718) 254-6125

---

        [6]      In <u>Benjamin v. Fraser</u>, 264 F.3d 175, 186 (2d Cir. 2001), the court found, in a civil action brought under the Prison Litigation Reform Act, that substantial delays during attorney visitation infringed upon the defendants' right to counsel, however, the court also found that "institutional security regulations were not the sole or even the primary reason for undue delays to attorney visits." Here, unlike <u>Benjamin</u>, the reason for any complained of delay was attributable to the defendants' placement in administrative detention, which directly addressed a legitimate security concern.