

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JB:JL                                    *271 Cadman Plaza East*
F. #2007R00730                           *Brooklyn, New York 11201*

March 7, 2008

The Honorable Nicholas G. Garaufis
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

             Re:  United States v. Joseph Agate, et al.
                  Criminal Docket No. 08 CR 76 (NGG)

Dear Judge Garaufis:

          The government submits this letter in response to the
motion for reassignment of the above-captioned case.  As set
forth below, the government properly followed Eastern District
Division of Business Rule 50.3 in seeking to relate this case and
the Court appropriately exercised its discretion in agreeing to
accept it as a related case.

I.   Introduction

          On February 6, 2008, following the return of the
indictment, the government submitted a letter advising the court
that United States v. Joseph Agate, et al., No. 08 CR 76 (NGG)
("Agate"), was "related" to criminal cases pending before this
Court and Judge Brian M. Cogan under Rule 50.3(c).  The
government also submitted an information sheet identifying the
related cases pursuant to Rule 50.3(d).  (See Agate Docket Entry
No. 1, Part 2, at 62.)  On February 7, 2008, following the
arrests, the indictment, information sheet and relation letter
were publicly filed with the court.  On February 8, 2008, this
Court, after noting that it had consulted with Judge Cogan,
issued an order agreeing to accept Agate as a "related case."

          On February 14, 2008, defendant Joseph Corozzo filed a
motion objecting to the Court's order and seeking to reassign the
case to a randomly-selected judge.  On February 19, 2008, the
Court issued an order permitting any other defendant who wished
to join that motion or otherwise address the relation request to
do so by February 29, 2008.  Thirty-six defendants joined the

motion for reassignment.[1]

II.  Discussion

        In his motion, Corozzo first argues that the government violated Rule 50.3 by "bypass[ing] the Clerk's Office" and "mak[ing] its own determination of which Courts [Agate] should be assigned to" and then "contact[ing] the relevant judges . . . before submitting the request to the Clerk's Office." (Corozzo Memorandum ("Mem.") at 3-6.)  Corozzo next argues that the government "engaged in a systematic campaign of omission and misrepresentation," in circumvention of the random-selection system, to drive Agate to this Court.[2] (Id. at 6-17.)  Finally, Corozzo argues that the government violated his due process rights and it should be presumed that he suffered actual prejudice from the assignment of Agate to this Court. (Id. at 17-19.)

        A.   The Government Properly Followed Rule 50.3

        Corozzo argues that Agate "was deemed related only upon an ex parte submission to this Court, and not to the Clerk's Office and on notice to all parties." (Mem. at 3.)  Corozzo is incorrect.

        On February 6, 2008, after the grand jury returned the indictment in Agate, the government presented the indictment

_____

        [1]   Those defendants include Joseph Agate, Vincent Amarante, Thomas Cacciopoli, Frank Cali, Charles Carneglia, Joseph Casiere, Mario Cassarino, Domenico Cefalu, Joseph Chirico, Gino Cracolici, Vincent DeCongilio, Leonard DiMaria, Vincent Dragonetti, Robert Epifania, Russell Ferrisi, Joseph Gaggi, Richard G. Gotti, Vincent Gotti, Ernest Grillo, Steven Iaria, Anthony Licata, Anthony O'Donnell, James Outerie, Vincent Pacelli, Todd Polakoff, Guilio Pomponio, Jerry Romano, Angelo Ruggiero, Jr., Anthony Scibelli, Augustus Sclafani, Joseph Scopo, William Scotto, Joseph Spinnato, Michael Urciuoli, Tara Vega and Arthur Zagari.  Defendant William Kilgannon specifically took no position on the motion.

        [2]   In their motions, defendants Leonard DiMaria, William Scotto and Mario Cassarino make variations on the first two arguments.  Cassarino seeks reassignment to Judge Frederic Block or in the alternative to a randomly-selected judge.  Scotto and DiMaria, like the rest of the defendants who joined the motion, seek reassignment to a randomly-selected judge.

along with the information sheet and its relation letter to the Clerk's Office.  After reviewing the relation request, the Clerk's Office assigned the case to Judge Garaufis.  Thereafter, the government delivered a copy of the indictment and relation letter to Judge Garaufis and Judge Cogan.  On February 7, 2008, following the arrests, the government filed the information sheet and its relation letter.

        Contrary to Corozzo's argument, the government did not bypass the Clerk's Office or independently determine to whom the case should be assigned.  Rather, the government followed the procedure set forth in Rule 50.3 by presenting the indictment to the Clerk's Office and indicating, by the information sheet and its relation letter, to which cases it was deemed related by definition of the rule.  The government then gave appropriate notice to the defendants by filing the information sheet and relation letter with the court.

        As the relation letter indicates, Agate defendant James Outerie was previously charged in an indictment in United States v. James Outerie, et al., No. 06 CR 815 (BMC) ("Outerie"), pending before Judge Cogan.  When Outerie was indicted in Agate, "more than one indictment . . . [was] filed against the same defendant . . . ."  Rule 50.3(c)(B).  Under that rule, the government notified the court that Agate was related to Outerie.

        Defendants Charles Carneglia and Leonard DiMaria also were charged in Agate with the same securities fraud conspiracy charged in United States v. Jonathan Winston, et al., No. 00 CR 1248 (NGG) ("Winston").  Likewise, defendants Vincent Dragonetti and Steven Iaria were charged in Agate with the same extortionate extension of credit conspiracies charged in United States v. John Doe, No. 08 CR 46 (NGG) ("Doe").  Both Winston and Doe are pending before this Court.  Because of "the similarity of facts . . . [and] because the cases arise from the same transactions or events [such that] a substantial saving[s] of judicial resources is likely to result from assigning both cases to the same judge," the government made a written application notifying the court that Agate is related to Winston and Doe under Rule 50.3(c).  In accordance with that rule, the government provided notice to the defendants in Agate at the earliest practical moment -- on the day of the arrests -- by filing the information sheet and relation letter.

        Thereafter, following the Court's decision to accept Agate as a related case, Corozzo filed his objection and the Court agreed to entertain the motion for reassignment.  The Court then provided additional time (in excess of 10 days) for any

additional objections to the government's relation request.

Contrary to Corozzo's argument, the government did not circumvent the procedures in Rule 50.3, nor did it steer <u>Agate</u> to this Court. By identifying those cases that properly qualify for relation, the government followed the letter of the rule. To that end, the government explicitly indicated in its relation letter that it was "seeking guidance as to the proper relation in this matter." (Government's Relation Letter ("Ltr.") at 9.) Corozzo's apparent dissatisfaction with the Clerk's Office assignment of <u>Agate</u> as a related case to this Court is not a result of any failure by the government to follow the procedures in Rule 50.3.

B. **The Government Did Not Drive this Case to this Court in Circumvention of the Random-Selection System**

Corozzo argues that the government omitted and misrepresented information about <u>Winston</u> and <u>Doe</u> and "numerous other cases in the Eastern District of New York involving defendants in <u>Agate</u>" in order to drive <u>Agate</u> to this Court. (Mem. at 14.) Corozzo also takes issue with the government's decision to rely on <u>Outerie</u> in its relation letter. (<u>Id.</u> at 17.) As set forth below, the government did not misrepresent information about <u>Winston</u> and <u>Doe</u>, nor did it improperly rely on <u>Outerie</u>. Further, while the government mentioned two of the five other cases Corozzo claims were omitted, none of those cases are currently pending before judges in this district and therefore do not properly qualify for relation under Rule 50.3(c).

1. **Rule 50.3 Does Not Properly Apply to Cases that Are No Longer Pending**

Contrary to Corozzo's argument, the government did not "pick and choose which cases it would rely upon in making its relatedness argument . . . ." (<u>Id.</u> at 17.) Rather, in adherence to the rule, the government identified those defendants in <u>Agate</u> who were previously charged in currently pending cases or who were charged with crimes previously charged in currently pending cases. Rule 50.3(c) does not contemplate, nor does it comport with logic or common sense, to subject a case to relation that is no longer pending in the district.

First, under Rule 50.3(c)(B), cases are related only when "more than one indictment or information is filed against the same defendant or defendants." A plain reading of the rule, thus reveals that this section does not include cases in which the indictment against a defendant is no longer pending. Second,

under the "other cases" section of Rule 50.3(c), cases will be deemed related "only if a substantial saving[s] of judicial resources is likely to result from assigning both cases to the same judge, or is otherwise in the interest of justice."  In the context of Rule 50.3, the very purpose of which is to substantially save judicial resources, it is likewise clear that this section does not implicate prior cases that are no longer pending.[3]

        Under the Federal Rules of Criminal Procedure, a case is considered "no longer pending" when final judgment is entered and no direct appeal is filed or a direct appeal is filed and denied, and the time for filing a petition for certiorari has expired.  See Chacko v. United States, No. 96 CR 519 (JGK), 2005 WL 1388723, at *4 (S.D.N.Y. June 8, 2005) (interpreting the phrase "while the case is pending" under Rule 12(b)(3)(B)) (citing United States v. Ivic, 700 F.2d 51, 59 n.5 (2d Cir. 1983); United States v. Valdez-Camarena, 402 F.3d 1259, 1260-61 (10th Cir. 2005); United States v. Wolff, 241 F.3d 1055, 1057 (8th Cir. 2001) (per curiam)); Rice v. United States, 132 F. Supp. 2d 162, 163 (S.D.N.Y. 2001) (criminal proceedings are no longer pending once a defendant has been tried, convicted and has had his conviction affirmed on appeal).

        Any doubt about the application of Rule 50.3 is effectively dispelled by Administrative Order 2008-04, which was made effective March 3, 2008.  That order directs the United States Attorney to certify in writing that any case sought to be related "satisfies one of the three conditions in Rule 50.3(c) or involves the same specific conduct that is a subject of a pending case."  Administrative Order 2008-04 (emphasis added).  The administrative order thus requires "a pending case" for relation under the "other case" section of Rule 50.3(c).  In light of that requirement, it cannot be reasonably argued that Rule 50.3 contemplates relating a new case to one that is no longer pending.

_____

        [3]    Only Rule 50.3(c)(C) contemplates a case that is no longer pending.  Under that section, a criminal case is related "when an application is filed by a person in custody that relates to a prior action."  Given that such applications, as in petitions for habeas relief, directly relate to the underlying case, it is clear that relating those cases is appropriate even when the underlying case is no longer pending.

         2.   The Cases Cited By Corozzo
              Do Not Qualify for Relation

         Nevertheless, Corozzo argues that the government's
failure to mention numerous other cases in this district that are
no longer pending "magnifies the appearance of prosecutorial
'judge shopping.'"  (Mem. at 14.)  Listing the cases the
government purportedly failed to mention, Corozzo first
identifies United States v. William Scotto, et al., No. 06 CR 72
(CPS), in which Agate defendant William Scotto was charged and
convicted.  Contrary to Corozzo's argument that "the government
failed to even mention this case in their (sic) letter," (id. at
15 (emphasis in original)), the government noted on the
first page of its relation letter that Scotto was convicted on February
4, 2008.  (See Ltr. at 1 n.1.)  Given that Scotto was sentenced
following a plea of guilty and his time for appeal has since
expired, however, that case is no longer pending.  Hence, it does
not constitute a proper basis for relation.

         Corozzo also identifies United States v. Angelo
Ruggiero, et al., No. 05 CR 196 (SJF), in which Agate defendant
Angelo Ruggiero, Jr. was charged.  Though Corozzo again
incorrectly complains that this case was not raised in its
relation letter, the government in fact noted that following a
plea of guilty, Ruggiero's case was transferred to the Southern
District of New York for sentencing.  (See Ltr. at 1 n.1.)  As a
result, that case is no longer pending in this district and not
properly considered for relation.[4]

         Corozzo further identifies three other cases -- United
States v. Richard G. Gotti and Jerome Brancato, et al., No. 02 CR
606 (FB), United States v. Nicholas Corozzo, Leonard DiMaria and
Vincent Dragonetti, et al., No. 97 CR 80 (FB), and United States
v. Domenico Cefalu, No. 94 CR 94 (ERK) -- in which Agate
defendants Jerome Brancato and Richard G. Gotti, Nicholas
Corozzo, Leonard DiMaria and Vincent Dragonetti, and Domenico
Cefalu, respectively, were charged and convicted.  All of the

_____

         [4]   In addition, "[i]t requires no discussion to conclude
that [Rule 50.3] was not intended, nor could it have been, to
relate a case in one court with a case in another.  If, for
example, the indictment in both cases were pending at the same
time, a Local Rule could not have caused the indictment in the
Southern District to be 'related' to the indictment here simply
because the defendant was charged with a similar crime in each
district."  Bellomo v. United States, 297 F. Supp. 2d 494, 497
(E.D.N.Y. 2003).

defendants in those cases either pleaded guilty (Corozzo, DiMaria and Dragonetti) or were convicted after trial (Gotti, Brancato and Cefalu).  All of the defendants have been sentenced and all of their appeals have been exhausted.  As a result, those cases are no longer pending and not appropriately subject to relation.

It is thus of no moment, as argued by Corozzo, that some of those cases involve allegations relating to the Gambino family similar to those in Agate.  Just like many other cases in this district involving racketeering charges against members and associates of organized crime -- including United States v. Jerome Brancato, et al., No. 01 CR 416 (ILG), in which Agate defendant Jerome Brancato was charged and convicted; United States v. Vincent DeCongilio, et al., No. 01 CR 382 (ADS), in which Agate defendant Vincent DeCongilio was charged and convicted; United States v. Charles Carneglia, et al., No. 00 CR 638 (JM), in which Agate defendant Charles Carneglia was charged and convicted; and United States v. Nicholas Corozzo and Leonard DiMaria, et al., No. 78 CR --- (JBW),[5] in which Agate defendants Nicholas Corozzo and Leonard DiMaria were charged and convicted -- those cases are no longer pending and therefore do not properly qualify for relation under Rule 50.3.  Not even Brancato, DeCongilio, Carneglia or DiMaria raise their prior cases in an attempt to support the theory of relatedness advanced by Corozzo.

Under that theory, still other prior Agate defendant cases that are no longer pending would also qualify for relation under Rule 50.3.  See, e.g., United States v. Nicholas Corozzo, Leonard DiMaria and Charles Carneglia, et al., No. 85 CR 178 (Nickerson, J.) (in which DiMaria, Corozzo and Carneglia were charged, and DiMaria and Corozzo were acquitted after trial and the charges against Carneglia were dismissed); United States v. Leonard DiMaria, et al., No. 83 CR 1292 (Bramwell, J. and McLaughlin, J.) (in which DiMaria was charged and convicted); United States v. Domenico Cefalu, et al., No. 81 CR 373 (Nickerson, J.) (in which Cefalu was charged and convicted); United States v. Nicholas Corozzo and Leonard DiMaria, et al., No. 72 CR --- (Dooling, J.) (in which DiMaria and Corozzo were charged and convicted).[6]  However, the age of those cases,

_____

[5]     The government was unable to determine the docket number of this case filed in 1978.

[6]     The government was unable to determine the docket number of this case filed in 1972.  It also was unable to determine the judge assigned to United States v. Joseph Corozzo,

highlighted by the fact that the judges who presided over them no longer sit on the bench, clearly demonstrates the fundamental flaw in Corozzo's theory and its incompatablility with a reasoned application of the relation rule.

That flaw was most recently exposed in <u>United States v. Schwamborn</u>, No. 06 CR 328 (SJF), 2006 WL 3337512 (E.D.N.Y. Oct. 26, 2006), in which the defendant, represented by Joseph Corozzo, Esq., made virtually the same argument for reassignment as in the instant case.[7]  In <u>Schwamborn</u>, the defendant was charged with RICO, RICO conspiracy, mail and wire fraud conspiracy, mail fraud, wire fraud, money laundering conspiracy and interstate transportation of stolen securities in <u>United States v. Salvatore Aparo, et al.</u>, No. 01 CR 416 (ILG) ("<u>Aparo</u>"), before Judge I. Leo Glasser.  In November 2002, the defendant pleaded guilty to the entire indictment.  Following an appeal, the case was remanded and the defendant was resentenced in June 2005.  <u>See</u> <u>Schwamborn</u>, 2006 WL 3337512, at *1-2.

In May 2006, the defendant was charged with money laundering conspiracy in <u>United States v. Frank Schwamborn</u>, No. 06 CR 328 (SJF), before Judge Sandra J. Feuerstein.  The government related the case to two cases pending before Judge Feuerstein but did not relate it to <u>Aparo</u>.  The defendant moved to reassign <u>Schwamborn</u> to Judge Glasser on the ground that the government improperly steered the case to Judge Feuerstein.  <u>See</u> <u>id.</u> at *3.  In support of his motion, the defendant argued that "the prosecutor in this case deliberately violated the local rules to steer this case to [Judge Feuerstein] by his intentional omission of an unquestionably related case, <u>United States v. Aparo</u> . . . ." (<u>Schwamborn</u> Memorandum of August 8, 2006, at 10 (attached hereto) (Docket Entry No. 15).)

In rejecting the defendant's argument that the facts and legal issues were the same as <u>Aparo</u>, Judge Feuerstein found that "Schwamborn pled guilty to the <u>Aparo</u> offenses and was incarcerated for those crimes.  Therefore, this case is not related to Schwamborn's portion of the <u>Aparo</u> case."[8]  <u>Id.</u> at *4.

---

No. 79 CR 284, in which Joseph Corozzo was charged and convicted.

[7]     Indeed, large portions of Corozzo's memorandum in support his argument in this case appear to be incorporated from the memorandum in <u>Schwamborn</u>.

[8]     Two months later, the defendant then moved to consolidate <u>Schwamborn</u> with <u>Aparo</u>.  Recognizing that the defendant was raising the identical arguments rejected by Judge

As was the case in <u>Schwamborn</u>, the cases cited by Corozzo are no longer pending and therefore, like the numerous other prior <u>Agate</u> defendant cases identified above, do not properly qualify for relation under Rule 50.3.

> 3. The Cases Cited By Corozzo Do not Arise From the Same Transactions and Events or Present <u>the Same Factual and Legal Issues As in *Agate*</u>

In addition, not only are the cases relied upon by Corozzo no longer pending, but they do not relate to the same offenses charged in <u>Agate</u>. Specifically, <u>Agate</u> does not involve any racketeering acts or substantive counts that were charged in <u>Scotto</u> (06 CR 72), <u>Ruggiero</u> (05 CR 196), <u>Gotti/Brancato</u> (02 CR 606), <u>Corozzo/DiMaria/Dragonetti</u> (97 CR 80), or <u>Cefalu</u> (94 CR 94). Corozzo does not argue, nor can he, that the charges in <u>Agate</u> arise from the same transactions and events or present the same factual and legal issues as in those cases.

Rather, Corozzo relies on the fact that the general racketeering allegations relating to the Gambino family enterprise and certain statutory violations are similar to those in <u>Agate</u>. However, it cannot be seriously argued that such allegations, a version of which accompany every organized crime racketeering case in the district, or similar statutory violations satisfy the criteria for consideration as a related case. Were that the case, virtually every single organized crime case would be subject to and qualify for the relation rule. Clearly, that is not consistent with the intent or purpose of Rule 50.3(c) to provide "a substantial saving[s] of judicial resources."

> C. The Government Identified Those Cases <u>that Properly Qualify for Relation</u>

In contrast to the cases cited by Corozzo, the government identified in its relation letter three currently pending cases -- <u>Winston</u>, <u>Doe</u> and <u>Outerie</u> -- that properly qualify for relation under Rule 50.3.

> 1. <u>Outerie</u>

Corozzo argues that it is "telling that the government

---

Feuerstein, Judge Glasser found that the motion was barred by collateral estoppel. <u>See</u> <u>United States v. Schwamborn</u>, 468 F. Supp. 2d 425, 428 (E.D.N.Y. 2007).

alleged that [Agate] was related to a matter before Judge Cogan,
[Outerie], which is scheduled for trial." (Mem. at 17.)  While
it is incorrect that Outerie was, at the time of the Agate
indictment, or is now, scheduled for trial, the relation of Agate
to that case cannot be seriously questioned as inconsistent with
Rule 50.3(c)(B).  Having been charged in Agate, Outerie now faces
indictments in two cases.

        The fact that after consultation with this Court, Judge
Cogan exercised his discretion in declining the relation does not
support the argument that the government undertook "a calculated
and systemic course of conduct designed to have the Agate matter
heard by a judge which was preferred by the government." (Id.)
Just the opposite is true - it would have violated the rule if
the government had failed to identify Outerie in its relation
letter and thereby deprive Judge Cogan of the opportunity to
consider the relation request.  Corozzo's argument to the
contrary turns the rule on its head and invites the very judicial
forum-shopping decried in his motion.

        2.   Winston

        Corozzo argues that the securities fraud conspiracy
charged in Agate has only a de minimus connection to Winston.
While he does not contest the fact that the securities fraud
allegations in Agate relate to those in Winston, Corozzo argues
that Winston is the same as countless other "pump and dump" stock
fraud cases, to which the same relation argument would apply.
(See Mem. at 12-13.)  Corozzo's argument lacks merit.

        As an initial matter, Corozzo does not contest that
Winston is pending.  Unlike the cases relied on by Corozzo, one
of the defendants in Winston charged in the securities fraud
conspiracy has not yet been sentenced.  Moreover, contrary to the
argument by Corozzo that Winston has "no allegations of organized
crime" (Mem. at 12), by Cassarino that "[n]o allegations whatever
involving organized crime appeared in Winston," (Cassarino Letter
at 2), and by DiMaria that Winston "contained no allegations of
organized crime," (DiMaria Letter at 1), the indictment alleges
that defendants Hunter Adams and Michael Reiter, who led the
securities fraud scheme, were associates of the Gambino family.

        Corozzo and Cassarino's arguments are particularly
curious given that counsel for both Corozzo and Cassarino, at
different times, represented Winston defendant Hunter Adams, who
moved "to strike references to his association with the Gambino
Crime Family" from the indictment in that case.  (Winston
Memorandum and Order dated October 31, 2002, at 21 (attached

hereto) (Docket Entry No. 338).)  In response to that motion, the government in <u>Winston</u> argued that "it will prove at trial that the alleged threats directed at brokers and investors were made, in part, by members of the Gambino Crime Family."  (<u>Id.</u> at 21- 22.)  In denying the motion to strike, the Court held that the references to organized crime were "relevant to the crimes charged" in that case.  (<u>Id.</u> at 22.)

Corozzo's attempt to characterize <u>Winston</u> as a standard "pump and dump" stock fraud case indistinguishable from scores of others is simply unavailing.  By his own admission, <u>Winston</u> was "a <u>massive</u> securities fraud case." (Mem. at 12 (emphasis in original).)  Indeed, the case involved the manipulation of the market price of securities of 10 companies by over 30 defendant brokers, traders, stock promoters and principals of the broker- dealer syndicate over six years, resulting in investor losses exceeding $100 million.

From the allegations in the indictment alone, <u>Winston</u> cannot be properly characterized as a run-of-the-mill stock fraud case.  By any measure, it stood apart from other stock fraud schemes in size, breadth and complexity.  (<u>See</u> <u>Winston</u> Order of May 2, 2001, granted complex case exclusion (Docket Entry No. 109).[9])  As a result, contrary to Corozzo's argument, <u>Winston</u> cannot rightfully be lumped in with "every securities fraud case brought in the Eastern District of New York."  (Mem. at 13.)

In <u>Agate</u>, the charges against defendants Carneglia and DiMaria involve that same complex securities fraud conspiracy. To prove the charges against those defendants, the government will necessarily have to present evidence of the stock manipulation scheme alleged in <u>Winston</u>.  The government will have to show how the defendants charged in <u>Winston</u> fraudulently inflated the market price of publicly-traded securities; how those defendants acquired secret control of stocks of thinly- capitalized companies; how they placed those stocks in nominee accounts; and how they illegally inflated the prices through false and fraudulent representations to customers, high pressure and deceptive sales tactics, and threats of bodily harm.  The government will have to show how the <u>Winston</u> defendants then illegally profited by selling their shares of stock once the

---

[9]    <u>See</u> <u>United States v. Astra Motors Cars</u>, 352 F. Supp. 2d 370, 373 (E.D.N.Y. 2005) (in denying defendant's argument for reassignment, the court cited "the complexity of the <u>Astra Motors</u> case" as one of several factors in deciding that "it makes sense to have both cases proceed together.").

market price was sufficiently inflated.

In sum, proof of the allegations in <u>Winston</u> is essential to the charges against DiMaria and Carneglia.  Indeed, without such proof, the government will be unable to meet its burden against these defendants.  It is thus without question that the securities fraud conspiracies charged in <u>Agate</u> and <u>Winston</u> stem from common transactions and events and contain similar facts and legal issues.  As a result, relation of <u>Agate</u> to <u>Winston</u> is proper under Rule 50.3.

     3.   <u>Doe</u>

Corozzo does not contest the fact that <u>Agate</u> is related to <u>Doe</u>; nor can he.  Given that the extortionate extension of credit conspiracies charged against <u>Agate</u> defendants Vincent Dragonetti and Steven Iaria are the same conspiracies charged in <u>Doe</u>, this case qualifies for relation.  Instead, Corozzo takes issue with the prior relation of <u>Doe</u> to <u>Winston</u>.  Corozzo argues that "<u>Doe</u> had nothing whatsoever to do with the <u>Winston</u> matter," and was "tactically created" by the government to buttress and strengthen the connection between <u>Agate</u> and <u>Winston</u>.  (Mem. at 10.)  Corozzo's argument is unavailing.

While Corozzo argues that the government violated the relation rule, it was well within the Court's discretion to accept <u>Doe</u> as a related case.  Contrary to Corozzo's argument, the Court appropriately found that a substantial savings of judicial resources would result from the relation of that case to <u>Winston</u>.

The Court, which had previously sentenced Doe to a significant term of imprisonment in <u>Winston</u>, was considering an application for a reduction in Doe's sentence.  In order to decide that application, it was necessary for the Court to understand and consider the charges in <u>Doe</u>.  Those charges necessarily impacted the resolution of the application and resolution of the application necessarily impacted <u>Doe</u>.  To not then accept <u>Doe</u> as a related case would work contrary to the purpose of saving judicial resources under the rule.  This is especially so given that much of the conduct alleged in <u>Doe</u> occurred while under the Court's supervision.  Given the Court's familiarity with the history of Doe through the pendency of <u>Winston</u>, including the application for a reduction in his sentence, the Court appropriately exercised its discretion to accept the relation of <u>Doe</u>.

D.   <u>There is No Violation of Due Process</u>

In his motion, Corozzo argues that since the government's alleged violation of the relation rule constitutes judge shopping, and judge shopping violates due process, the government's alleged violation of the relation rule violates Corozzo's due process rights.  Corozzo then argues that the Court should presume that he suffered actual prejudice as a result of that violation.  (Mem. at 17-19.)  As shown above, the government did not violate the relation rule.  In any event, Corozzo's faulty syllogistic logic does not allow him to bootstrap his argument that the government violated the relation rule into a due process claim.

Courts have sole discretion to determine whether cases are related to one another and whether to reassign cases that are not.  Rule 50.3 creates no "enforceable right" for parties to insist that a case be reassigned.  The preamble to the Local Rules provides that "[t]hese rules are adopted for the internal management of the case load of the court and shall not be deemed to vest any rights in litigants or their attorneys . . . ."  <u>United States v. Davila-Bajana</u>, 172 F.3d 38 (2d Cir. 1998) (unpublished summary order) (citing the "introduction to the EDNY Guidelines," the court found defendant's "conten[tion] that the reassignment of this case in the district court from Judge Allyne Ross to Judge Raggi violated Rule 50.3 . . . as well as his constitutional right to due process . . . legally baseless.").

Courts repeatedly have held that "these rules are not intended to give the parties a right to litigate where a particular case will be tried, but merely provide the guidelines by which the Eastern District administratively handles and assigns its cases."  <u>United States v. Garces</u>, 849 F. Supp. 852, 861 (E.D.N.Y. 1994); <u>see also</u> <u>Astra Motors</u>, 352 F. Supp. 2d at 372 (finding that the defendants did not have any rights to make a motion for reassignment); <u>Schwamborn</u>, 2006 WL 3337512, at *3; <u>Schwamborn</u>, 468 F. Supp. 2d at 428-29.

In <u>Schwamborn</u>, Judge Glasser addressed and rejected the identical due process argument, based on the same logic, advanced by Corozzo here.  First, Judge Glasser found that the local rules do not vest a defendant with an enforceable right to relief.  <u>See</u> <u>Schwamborn</u>, 468 F. Supp. 2d at 427.  Next, Judge Glasser addressed Schwamborn's due process claim "that the Long Island prosecutor's failure to identify [the <u>Aparo</u> case] as a related one constitutes impermissible 'judge shopping' which violates Mr. Schwamborn's due process rights by tainting the Long Island Case

with the appearance of impartiality."   <u>Id.</u> at 428.   Judge
Glasser found:

> While the court doubts that the failure to
> properly assign a related case could
> constitute a due process violation in any
> event, it notes that Mr. Schwamborn's
> argument rests upon the premise that the Long
> Island Case should have been identified as a
> related case pursuant to Guidelines Rule
> 50.3(a), an issue that was resolved by Judge
> Feuerstein against Mr. Schwamborn in his
> identical motion in the Long Island Case . .
> . .

<u>Id.</u>

In the case before Judge Feuerstein, Schwamborn argued
"that by not designating this case as related to the <u>Aparo</u> case
[before Judge Glasser], the Government engaged in 'prosecutorial
judge shopping' in violation of [Schwamborn's] Due Process
rights."  In rejecting that argument, Judge Feuerstein found that
"[s]ince the Government acted properly in omitting <u>Aparo</u> from the
information sheet, [Schwamborn's] Due Process arguments need not
be addressed."  <u>Schwamborn</u>, 2006 WL 3337512, at *4.

The rulings by Judge Glasser and Judge Feuerstein apply
with equal force here.  As indicated by Judge Glasser, it is
doubtful that the failure to properly assign a related case could
constitute a due process violation.  As was the case in
<u>Schwamborn</u>, Corozzo has not cited any cases or otherwise provided
persuasive authority to overcome that doubt.  Nevertheless, as
set forth above, the government properly followed the procedures
in Rule 50.3 in relating <u>Agate</u> to the cases before this Court and
Judge Cogan.  As a result, Corozzo cannot prevail on his claim
that his rights, due process or otherwise, were violated in this
case.

III.  <u>Conclusion</u>

       Because the government properly followed Eastern District Division of Business Rule 50.3 in seeking to relate this case and the Court appropriately exercised its discretion in agreeing to accept it as a related case, the Court should deny the defendants' motion to reassign the case.

                      Respectfully submitted,

                      BENTON J. CAMPBELL
                      UNITED STATES ATTORNEY

By:  _____/s/_____
      Joey Lipton
      Roger Burlingame
      Daniel Brownell
      Evan Norris
      Assistant U.S. Attorneys
      Amy Cohn
      Special Assistant U.S. Attorney
      (718) 254-7000

cc:  All Counsel of Record